## Petition of ZAORAL.
### No. 172440.

District Court, N. D. Illinois, E. D.

March 13, 1939.

Claude O. Netherton, of Chicago, Ill., and William P. McCracken, of Washington, D. C., for Zaoral.

Fred J. Schlotfeldt, of Chicago, Ill., for the Government.

IGOE, District Judge.

The petition of Charles Theodore Zaoral to be admitted as a citizen of the United States was submitted on stipulation that the Court should consider the evidence taken before the Examiner without any recommendations or findings by him. The Court was also furnished with a copy of a memorandum signed by the Solicitor of the Department of Labor to the Commissioner of Immigration and Naturalization, and a memorandum on behalf of the petitioner.

From the evidence it appears that Charles T. Zaoral, a citizen of Austria, came to the United States on November 2, 1923, as a quota immigrant, and in December, 1923, filed a Declaration of Intention in the Montgomery County Court at Norristown, Pennsylvania. Soon thereafter he entered the employ of Dodge Brothers, Inc., in Chicago. On November 26, 1926, he married a citizen of the United States. On December 2, 1926, he was sent by Dodge Brothers, Inc., to South Africa on business of that Company, and remained in South Africa in such employment up to August, 1927, when he returned to Detroit, continuing in the employment of Dodge Brothers, Inc., until on or about March 1, 1930.

On March 5, 1929, Mr. Zaoral filed a petition for naturalization in Detroit, Michigan, but due to change of address did not receive notice of the hearing on his petition prior to his departure from the United States on March 5, 1930, in the employ of a subsidiary of the General Motors Corporation located in Germany. The petition came on for hearing in the United States District Court in Detroit on March 27, 1930. Mr. Zaoral being absent and not having received any notice of the hearing, the petition was denied because of absence—failure to prove five years' residence.

From March 5, 1930, to July 13, 1936, Mr. Zaoral remained in Germany in the course of his employment with the subsidiary of General Motors Corporation. On July 13, 1936, he returned to the United States, in the course of his employment, bringing a group of German business men to visit the corporation's plants and offices in Detroit and in New York, and remained until August 1, 1936, when he returned with the same group of men to Germany. He remained in Germany until July 18, 1938, when he came to the United States. On August 12, 1938, he made application to the Secretary of Labor for a finding that his employment by an American corporation in its foreign business continuously during said period entitled him to the benefits of the Act of June 25, 1936, 49 Stat. 1925, 8 U.S.C.A. §§ 382, 382a, as a consequence of which his residence abroad might properly be construed as residence in the United States for naturalization purposes.

This application was denied September 21, 1938, apparently because the 1936 Act had been considered by the Department of Labor as partially repealed by the Act of June 29, 1938, 52 Stat. 1247, 8 U.S.C.A. § 382, and it was thought that his case was not within the saving clause of the 1938 Act with respect to cases under the 1936 Act. Thereafter, Mr. Zaoral requested a reconsideration of the Department's ruling, and the facts of the case were reconsidered and treated as an application for the benefits of the Act of June 25, 1936, as amended by the Act of June 29, 1938. Consideration was given the case as such by the Board of Review, which rendered a decision on December 15, 1938, recommending that the application be not approved. However, at a later date, about February 15, 1939, the Secretary of Labor made a finding that "she was satisfied with facts in the Charles T. Zaoral case that alien's employment abroad comes within the terms of the Act of June 25, 1936, but the Court should be asked to rule on all questions presented by case".

The evidence shows conclusively that the petitioner meets all the requirements of the Naturalization Laws with the possible exception of the requirement as to residence. The facts of the case present several questions of construction of the provisions of the Act of June 25, 1936, and the Act of June 29, 1938, as well as a question concerning the effect on both of these Acts of the Cable Act of September 22, 1922, as amended by the Act of May 24, 1934, 48 Stat. 797, 798.

In the presentation of the case the Director of Immigration has raised the following points for the consideration of the Court:

1. Is there a sufficient Declaration of Intention on file to bring petitioner within the meaning of the Naturalization Laws and enable him to take advantage of the Law as amended by the Act of June 25, 1936?

2. Did the return to the United States on July 13, 1936, at which time the petitioner remained in the United States on the employer's business until August 1, 1936, break the continuity of his residence within the meaning of the Naturalization Laws as amended by the Act of June 25, 1936?

3. Construction of the Act of June 25, 1936, to determine the time within which application for its benefits must be made.

4. Construction of the Act as amended by the joint resolution of Congress passed June 29, 1938, which further amended the Naturalization Laws to provide that absence of one year or more from the United States would break the continuity of such residence, except in cases where the absence was for the purpose stated in the Act of June 25, 1936, and the Secretary of Labor has so found and the Court likewise was satisfied in that respect.

▆▆▆ (1) In regard to the point raised by the Government that no valid Declaration of Intention was on file at the time of the filing of the Naturalization Petition on September 26, 1938, the petitioner contends that his marriage to a citizen of the United States on November 26, 1926, entitled him to favored treatment under the 1922 Act, as amended by the 1934 Act, which provides that no Declaration of Intention shall be required of aliens marrying citizens of the United States after the passage of the Act of 1922, "as here amended". This language has been construed by the Courts to confer the benefits of the 1934 Act upon an alien marrying a citizen after the enactment of the 1922 Act but before the enactment of the 1934 amendment. United States v. Balestra, 3 Cir., 1937, 88 F.2d 43; United States v. Bradley, 7 Cir., 1936, 83 F.2d 483.

Section 1 of the 1936 Act in terms confers the exception in the case of an "Alien declarant" and the later amendatory Act of 1938 also makes the exception,

"* * * in the case of an alien— * * *.

"(c) who has made a declaration of intention to become a citizen of the United States * * *."

In recommending that the application be not approved, the Board of Review ruled that the Act of September 22, 1922, as amended, does not in any way modify the requirements of the Act of June 25, 1936, as amended on June 29, 1938, that both the 1936 and 1938 Acts were intended to apply only in the cases of aliens falling specifically within the terms of those Acts and that both of those Acts refer to aliens who had filed valid Declarations of Intention.

It is contended by the petitioner that the 1922 Act, as amended by the 1934 Act, should not be ignored if full effect is to be given to its manifest intention. The 1934 Act provides that an alien, who mar-

ries a citizen of the United States after the enactment of the 1922 Act, "may be naturalized upon full * * * compliance with all requirements of the naturalization laws with the following exceptions: (a) No declaration of intention shall be required. * * *" 8 U.S.C.A. § 368. It would seem that the form of this Act should be considered in its construction. The exception is an exception to compliance with "the naturalization laws". This general reference to "the naturalization laws" indicates a congressional intent to embrace the whole body of laws relating to the subject of naturalization, and the exception may very well be construed by the courts to relieve the favored class of aliens from the requirements of filing a declaration of intention wherever such a requirement appears in the naturalization laws.

This Act has not been repealed, and the petitioner contends that to adopt the construction of the Board of Review would produce the result that the Acts of 1936 and 1938, purely remedial in character, would operate to deny their remedies to a class of aliens clearly favored by the 1934 amendment or operate to nullify the 1934 amendment in fact.

It was clearly not the intention of Congress by any legislation after 1934 to repeal the 1934 amendment, nor can there be any reason found in any later legislation to cause the court or any department of the Government to ignore the plain provision of this statute. The Acts of 1936 and 1938 were passed for the purpose of aiding certain classes of persons who were engaged in work for the Government, or for businesses which aided, among other things, our foreign commerce. These Acts certainly were not intended to require declarations of intention which by a previous law had been specifically not required of certain persons named therein. With the 1934 amendment still in full force and effect, and with no provision in the Acts of 1936 and 1938 which could by any stretch of the imagination limit or modify or amend the provision that "no declaration of intention shall be required by an alien married to a citizen of the United States", the Court holds that the petitioner in the case at bar was not required to file a Declaration of Intention. The Act of June 25, 1936, was intended to apply to a group of alien declarants who were ready to apply for citizenship. Mr. Zaoral, being married

to an American citizen, was in that group and under the Act of 1934 he was specifically excused from filing a declaration.

■ (2) The next question raised by the Department of Labor is: "Did the return to the United States on July 13, 1936, at which time the Petitioner remained in the United States on the employer's business until August 1, 1936, break the continuity of his residence within the meaning of the Naturalization Laws as amended by the Act of June 25, 1936?"

It appears that the petitioner did not make application for the benefits of the 1936 Act until August 12, 1938, which was after the enactment of the 1938 amendment. The Department of Labor contends that in order that the petition of September 26, 1938, could be favorably considered, it would be necessary for Zaoral to show continuous residence within the United States for at least three years, assuming that he is entitled to the benefits of the 1934 amendment to the Cable Act of 1922, and is not required to file a Declaration of Intention. He must, therefore, show continuous residence since September 26, 1935. On that date, and thereafter until July 13, 1936, and again from August 1, 1936, until July 18, 1938, he was abroad in Germany in the employ of a subsidiary of General Motors Corporation.

The first paragraph of the fourth subdivision of Section 4 of the Act of June 29, 1906, as amended, 45 Stat. 1513, 8 U.S.C.A. § 382, deals with the requirements and proof as to residence, character, and attachment to the Constitution, required to be shown by aliens generally as conditions precedent to admission to citizenship, and provides that:

"Fourth. No alien shall be admitted to citizenship unless

"(1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years * * *."

The second paragraph deals with the effect of absence from the United States and provides in part: "Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship shall break the continuity of such residence."

If the petitioner had been absent for more than a year, no matter what country he had been in and no matter what the circumstances might be, he lost his residence and it was necessary to deny his petition. Then came the amendment of June 25, 1936, Section 1 of which amends the last quoted provision by adding the following exception: "Except that in the case of an alien declarant ·for citizenship * * * employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States or a subsidiary thereof, no period of residence outside of the United States shall break the continuity of residence if (1) prior to the beginning of such period (whether such period begins before or after his departure from the United States) the alien has established to the satisfaction of the Secretary of Labor that his absence from the United States for such period is to be * * * engaged in the development of such foreign trade and commerce * * * and (2) such alien proves to the satisfaction of the court that his absence from the United States for such period has been for such purpose." 49 Stat. 1925.

Section 2 of the Act of June 25, 1936, 8 U.S.C.A. § 382a, provides: "Section 2. No period of residence outside the United States during the five years immediately preceding the enactment of this act [June 25, 1936], shall be held to have broken the continuity of residence required by the naturalization laws if the alien proves to the satisfaction of the Secretary of Labor and the court that during all such period of absence he has been under employment by, or contract with, the United States, or such American institution of research, or American firm or corporation, described in Section 1 hereof [section 382 of this title], and has been carrying on the activities described in this Act [such section] in their behalf. ([June 25, 1936, c. 811, § 2], 49 Stat. 1925.)"

With respect to his absence during the period from September 26, 1935, to June 25, 1936, it was agreed that Zaoral may take advantage of the provisions of Section 2 of the 1936 Act. It will be noted that the language of this Section is silent as to the time for making an application for its benefits. Consequently, it would seem that upon making the required showing concerning his employment, at any time after the passage of the 1936 Act, Zaoral will become entitled to a finding that he was a resident of the United States during the period between September 26, 1935, and June 25, 1936. The period from June 25, 1936, until July 13, 1936, need give no concern, since it was less than 6 months and therefore occasions not even a presumption of a break in the required continuity of residence.

As to the period of time from July 13, 1936, to August 1, 1936, Zaoral was in the United States on business of his employer and performing duties arising out of and in the course of such ·employment. It is clear that his residence abroad, within the meaning of Section 2 of the Act of June 25, 1936, could not be construed to .have been interrupted by this business trip, and it is equally true that it would have been useless to file a petition for naturalization, during this time, because proof of the required facts could not ·be made to the satisfaction of the court until the alien had been in this country at least 90 days (the time which must elapse between the filing of a naturalization petition and the hearing). It should therefore be held by the court, that the continuity of residence abroad was not broken by the trip to the United States.

(3) With respect to the absence of Zaoral during the period from August 1, 1936, to July 18, 1938, the Government contends that he must establish his continuous residence under the provisions of Section 1 of the Act of June 25, 1936, if at all.

On behalf of Mr. Zaoral it has been urged that a proper construction of Section 1 of the Act of 1936 should not require application for the benefits of the Act prior to the beginning of a period of residence abroad in the case of aliens who were in fact residing abroad at the time of the passage of the Act. Otherwise, it is urged, an alien resident abroad at the time of the passage of the Act, and engaged in employment which would entitle him to the benefits of the Act, could not, without actually returning to the United States, avoid a break in the continuity of his residence in the United States after June 25, 1936. Hence, it is contended, application for the benefits of the 1936 Act prior to the commencement of a period of residence abroad should be required only of those aliens who commence periods of residence abroad after the passage of the Act; and in the case of aliens resident abroad at the time of the passage of the Act, and whose

residence abroad during the preceding five years is specifically covered by Section 2 of the Act, the Department of Labor should adopt a construction of the Act permitting the establishment of the facts to the satisfaction of the Secretary of Labor at any time prior to the hearing on the naturalization petition.

On behalf of Mr. Zaoral it is further urged that with the Act of 1934 still in effect, he was actually an alien declarant within the meaning of the law; that under Section 2 of the Act of June 25, 1936, he was not required to return to the United States for the purpose of obtaining the consent, or establishing to the satisfaction of the Secretary of Labor that his residence away from the United States was for the purpose of engaging in the development of foreign trade and commerce in the employ of an American firm or corporation, but that he may any time after the passage of the Act of June 25, 1936, if still so engaged, return to the United States and file his petition for naturalization, and if he shows to the satisfaction of the Secretary of Labor and the Court that during all such period of absence he has been employed by an American firm or corporation, he may be entitled to citizenship.

In its consideration of the case, the Board of Review regarded the lack of a valid Declaration of Intention as fatal and refused to approve the petition. The District Director in Chicago suggested to the Department that the case be discussed on the alternative assumption that the Act of 1934 excused this omission and that consideration be given of whether or not Zaoral's application for the benefits of the 1936 Act had been made in apt time. The Central Office again denied the petition on the ground that Mr. Zaoral had a period of one year from June 25, 1936, to June 25, 1937, in which to make application for the benefits of the Act in question. Not having made this application until after he had been absent from the United States for a continuous period of more than one year subsequent to June 25, 1936, the continuity of his residence within the meaning of the Act of June 25, 1936, had been broken.

 This position of the Government makes it necessary to construe the Act of June 25, 1936, to determine the time in which the application must be made in order to obtain the benefits of the Act. There is nothing in the Act itself limiting the time in which application for its benefits must be made. The Government has laid down a rule, or regulation, which has no support in the Law, but is simply and solely an administrative construction which, in the case at bar, would operate to deny the benefits of the Act to one of the class which it seeks to aid.

It is believed that the statement in Section 2 of the Act of June 25, 1936: "No period of residence outside the United States during the five years immediately preceding the enactment of this Act [June 25, 1936], shall be held to have broken the continuity of residence," etc., was intended to give the Act a retroactive effect, and was not in any way intended as a limitation on the submission of an application at a later date or for a longer period of residence.

It should be borne in mind that the Act of June 25, 1936, was remedial legislation designed to aid persons who were engaged in promoting the interests of the United States in foreign countries and should be given a liberal construction which would accomplish its purpose. Under such a construction the failure of petitioner to make his Application for Naturalization until his return to the United States in 1938, which was more than one year after June 25, 1936, is not fatal, as his employment had not been interrupted or changed and he had applied at his first opportunity to become a citizen. The continuity of his residence within the meaning of the Naturalization Laws had not been broken.

 (4) On June 29, 1938, the Naturalization Laws were further amended to provide that: "Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship immediately preceding the date of filing the petition for naturalization or during the period between the date of filing the petition and the date of final hearing, shall break the continuity of such residence." 8 U.S.C.A. § 382.

The last paragraph of the 1938 Act, however, provides: "This amendment shall not affect cases of aliens who prior to the date of its enactment have established to the satisfaction of the Secretary of Labor, pursuant to an Act entitled 'An Act to amend the naturalization laws in respect of residence requirements, and for other purposes', approved June 25, 1936, * * * that absence from the United States was to be or had been for the purpose of carrying on

activities described therein." 8 U.S.C.A. § 382 note.

Under the construction of the Act of June 25, 1936, which would enable persons belonging to the classes intended to be aided to claim the benefits of the Act at any time prior to filing a petition, it would seem that such aliens may make such application for the benefits of the 1936 Act even after the passage of the 1938 Act, and the establishment of the facts concerning their employment to the satisfaction of the Secretary of Labor at any time prior to the filing of a petition for naturalization will constitute an establishment "pursuant to" the 1936 Act.

In construing Section 2 of the Act of June 25, 1936, as in full force and effect, no violence is done to the 1938 amendment. If it had been the intention of Congress to repeal or limit the Act of June 25, 1936, it should have been done by proper provision. The mere failure to mention Section 2 of the 1936 Act, while mentioning Section 1, is not sufficient reason for considering Section 2 as being repealed by implication. This is especially true when there is no conflict between the Acts of 1936 and 1938.

### Recapitulation.

The facts as stated have been agreed upon by counsel for the Government and counsel for the petitioner as a proper statement of the case before the Court. The Secretary of Labor is satisfied with all facts in the Zaoral matter, and that alien's employment abroad comes within the terms of the Act of June 25, 1936. The court is asked to rule on all questions presented and makes the following ruling:

1. That under a proper construction of the 1934 amendment to the Cable Act of 1922 the petitioner, and others similarly situated, are relieved from the requirements of filing a Declaration of Intention for the purposes of the 1936 and 1938 Acts.

2. The return to the United States in July, 1936, at which time the petitioner remained in the United States on the employer's business until August 1, 1936, did not break the continuity of his residence within the meaning of the Act as amended in 1936, for the reason that he was during all such time actually in the service of his employer and his filing of a Petition for Naturalization at that time would have been unavailing and useless.

3. Section 2 of the Act of June 25, 1936, is in full force and effect and was not repealed or modified by the joint resolution of Congress passed in 1938.

4. A proper construction of Section 1 of the Act of June 25, 1936, should not require application for the benefits of the Act prior to the beginning of a period of residence abroad in the case of aliens who were, in fact, residing abroad at the time of the passage of the Act and were engaged in the activities enumerated in the Act. The Act of June 25, 1936, was remedial legislation and designed to aid persons who were engaged in promoting the interests of the United States in foreign countries and should be given a liberal construction which would accomplish its purpose. Under such a construction an alien who had been continuously employed in the service of an American owned corporation in its foreign trade might any time upon his return to the United States after June 25, 1936, present his application and be given the benefits of the Act of 1936 as a resident in a foreign country while in the employ of a American owned corporation.

5. The Act of June 25, 1936, properly construed, would enable persons belonging to the classes intended to be aided to claim the benefits of the Act at any time prior to filing a petition, and such aliens may make such application for the benefits of the 1936 Act even after the passage of the 1938 Act, and the establishment of the facts concerning their employment to the satisfaction of the Secretary of Labor at any time prior to the filing of a Petition for Naturalization will constitute an establishment "pursuant to" the 1936 Act.

6. Section 2 of the Act of June 25, 1936, which provides, "No period of residence outside the United States during the five years immediately preceding the enactment of this Act [June 25, 1936], shall be held to have broken the continuity of residence," etc., was intended to give the Act a retroactive effect and was not in any way intended as a limitation on the submission of an application at a later date or for a longer period of residence.