607 So.2d 868 (1992)
Mildred HOWARD, Now Holland
v.
William A. STOKES, Individually and d/b/a Pamandy Corporation.
No. 24117-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*869 Theo J. Coenen, III, Rayville, for appellant Terrick, Inc.
Cooper and Hales, Rayville, by Thomas E. Cooper, Jr., for appellee Mildred Howard, now Holland.
Cotton, Bolton, Hoychick & Doughty, Rayville, by Terry A. Doughty, for appellee Wayne Vondenstein.
Before MARVIN, HIGHTOWER and VICTORY, JJ.
VICTORY, Judge.
This case involves the ranking of security interests in an agricultural crop among the holders of a combineman's privilege, a lessor's privilege, and a crop pledge. Notice of the crop pledge was properly filed and maintained in accordance with the provisions of LSA-R.S. 3:3651, et seq., although no such filing existed with respect to the other two security interests. The trial court rendered judgment ranking the security interests in the following order: (1) the combineman's privilege; (2) the lessor's privilege; and (3) the crop pledge. The holder of the crop pledge now appeals that ruling. We amend to rank the crop pledge ahead of the other two security interests, and affirm as amended.

FACTS
The facts are not in dispute. In February 1989, Mildred Holland leased 300 acres of farm land to William A. Stokes, Jr. for the production of cotton and soybeans at the rate of $40 per acre, per year, pursuant to a ten-year written lease. Holland had a lessor's privilege on the crops in accordance with LSA-C.C. Art. 3217; however, the written lease agreement was not recorded pursuant to LSA-R.S. 3:3651, et seq. Stokes made no payments on his lease during the 1990 crop year, which resulted in Holland obtaining a default judgment against Stokes on February 11, 1991 for $12,000 plus interest, costs and attorney fees.
In addition to the money Stokes owed Holland for the 1990 crop, Terrick, Inc. advanced $13,512.90 to Stokes for his farming operation during the 1990 crop year. Terrick, Inc. had Stokes execute a written crop pledge pursuant to LSA-R.S. 9:4341, et seq., and the pledge was recorded in accordance with the provisions of LSA-R.S. 3:3651, et seq.
Also in 1990, Wayne Vondenstein harvested soybeans for Stokes for a charge of $3,200, which he did not collect. As a combineman, Vondenstein had a privilege on the crop pursuant to the provisions of LSA-R.S. 9:4523.

DISCUSSION
The proper ranking of the three security interests at issue rests upon the *870 meaning of the provisions of LSA-R.S. 9:4521, which at times pertinent to this litigation provided:
The privileges and pledges on crops shall be ranked in the following order of preference, provided that notice thereof has been properly filed and maintained in R.S. 3:3651, et seq.:
(1) Privilege of the laborer, the thresherman, combineman, grain dryer, and the overseer.
(2) Privilege of the lessor.
(3) Pledges, under R.S. 9:4341, in order of recordation.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.
As shown by the above-quoted statutory provisions, the order of preference applies provided that notice is properly filed and maintained in accordance with the provisions of R.S. 3:3651, et seq.[1] Title 3 creates a central registry for recordation of all security devices establishing security interests in farm products.
In ranking the lessor's privilege and the combineman's privilege ahead of the recorded crop pledge, the trial court concluded that only a secured lender like Terrick, Inc., who had his security interest created in a written instrument, needed to file with the central registry in order to have his security interest ranked in the order of preference set forth in R.S. 9:4521. Because the law does not require the combineman's privilege or the lessor's privilege to be created in a written document, the trial court ranked these privileges ahead of the recorded crop pledge.
In so holding, the trial court overlooked pertinent provisions of Act 548 of 1989, effective August 22, 1989, prior to the 1990 crop year, which amended both the provisions of R.S. 3:3651, et seq. and R.S. 9:4521. Act 548 amended R.S. 3:3652(14) to define "security device" as a written instrument that established a creditor's security interest in farm products, or, any pledge or privilege described in R.S. 9:4521, whether or not evidenced by a written instrument. This change in the law made clear the legislature's intent for the term "security device" to include not only a written crop pledge established pursuant to the provisions of R.S. 9:4341, but also the privilege of the combineman and the privilege of the lessor, both of which are set forth in the provisions of R.S. 9:4521. Act 548 also added to R.S. 9:4521 the provisions concerning notice properly filed in accordance with R.S. 3:3651, et seq.
Further, Act 548 amended the provisions of R.S. 3:3656 to provide that the central registry would only accept and record written security devices accompanied by a related effective financing statement, and effective financing statements alone for unwritten security devices described in R.S. 9:4521. The changes to R.S. 3:3656 provided that only security interests as to which financing statements and written security devices were filed would be effective against third parties.
The definition of "security device" in effect at all pertinent times in this case included all three security interests at issue. Therefore, the trial court erred in reading the provisions of R.S. 9:4521 as applying only to the crop pledge. Because all three security interests were subject to the provisions of R.S. 9:4521 and R.S. 3:3651, et seq., but only the crop pledge was recorded, only the pledge was effective against third parties and should be ranked first.
We note that the 1989 amendments to R.S. 9:4521 and R.S. 3:3651, et seq. do not establish new ways to create the pledge and privileges at issue, nor is there a conflict between the provisions of R.S. 9:4521 and R.S. 9:4341. Both statutes subordinate a crop pledge to a laborer's privilege and a lessor's privilege. If notice of all three security interests in this case had been properly filed and maintained, the order of preference found in R.S. 9:4521 would have applied. However, because there was only proper notice of the crop pledge, that pledge was effective against Holland and Vondenstein, whereas their unrecorded *871 privileges were not effective against Terrick, Inc.
Holland and Vondenstein argue that the term "third parties" used in R.S. 3:3656 means only the purchasers of farm products, and not individual holders of security interests, like the three parties in this suit who are disputing the ranking of their interests. Although R.S. 3:3651, et seq. does not define the term, we do not interpret the words "third parties" used in R.S. 3:3656 as being limited only to purchasers of farm products, even though a primary purpose of the Title 3 provisions is to protect such purchasers from double payment for farm products. See LSA-R.S. 3:3651, et seq. and compare with 7 U.S.C.A. § 1631 upon which the Title 3 provisions are based. The 1989 amendments made by Act 548, especially to R.S. 9:4521 which is not in Title 3 dealing with security devices affecting farm products, make it clear the Legislature intended that anyone holding a security interest, including a laborer and a lessor, must comply with R.S. 3:3651, et seq. if they want to be protected in their ranking, even when a purchaser of the farm products is not involved, and only the holders of security interests are disputing their ranking.
An appellate court must read and construe words and phrases in statutes according to common and approved usage of language, and not disregard the letter of the statute under the pretext of pursuing its spirit, when the wording of the statute is clear and free of ambiguity. Jungina v. Stafford, 535 So.2d 794 (La.App.2d Cir. 1988). See also LSA-C.C. Arts. 9 and 11. The term "third party" is defined in Black's Law Dictionary (5th Ed.) as "one not a party to an agreement or to a transaction but who may have rights therein." Therefore, we hold that the term "third parties" as used in R.S. 3:3656 refers to parties other than the lessor and lessee with respect to the lessor's privilege, parties other than the pledgor and pledgee with respect to the crop pledge, and parties other than the combineman and crop owner with respect to the combineman's privilege.
Finally, we reject the additional argument of the lessor that because the effective date of Act 548 of 1989 was August 22, 1989, the lease executed on February 2, 1989 was not subject to the added provisions of R.S. 9:4521 concerning a notice properly filed and maintained under R.S. 3:3651, et seq. The lessor argues that the amendment should not be retroactively applied to a lease in existence prior to the effective date of the amendment, citing Flower v. Skipwith, 45 La.Ann. 895, 13 So. 152 (1893). In Flower, the court held that a law establishing the rank and order of privileges on crops could not be applied retrospectively to give a crop pledge preference over an antecedent privilege that was valid and subsisting at the date of the pledge. Flower is distinguishable from the instant case because the lessor's privilege on the 1990 crop did not come into existence until the 1990 crop itself came into existence, after the effective date of the amendment. Thus, we are not dealing with a retrospective application of the law, but a prospective application of the 1989 amendment to a 1990 crop and security interest.

CONCLUSION
For the reasons set forth above, we hold that the trial court erred in ranking the unrecorded combineman and lessor privileges ahead of the recorded crop pledge. Accordingly, we amend the second paragraph of the trial court judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein ranking the liens and privileges as follows:
FIRST, the crop pledge of TERRICK, INC., totalling $13,512.90.
SECOND, the laborer's privilege of WAYNE VONDENSTEIN, totaling $3,200.00.
THIRD, the lessor's privilege of MILDRED HOWARD, now HOLLAND, totaling $12,000.00.
The costs of the appeal are assessed to appellees equally.
*872 AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Prior to August 22, 1989 there was nothing in R.S. 9:4521 requiring notice to be filed and maintained in accordance with R.S. 3:3651, et seq.